**Larry MICK, et al., Plaintiffs,**

v.

**LEVEL PROPANE GASES, INC., Defendant.**

**No. 2:98–CV–959.**

United States District Court, S.D. Ohio, Eastern Division.

Feb. 14, 2000.

Joseph F. Murray, Geoffrey J. Moul, Murray Murphy Moul & Basil–2, Kimberly M. Skaggs, Equal Justice Foundation–2, Columbus, OH, Gary Michael Smith, Graham McClelland Ransbottom–2, Dover, OH, for Plaintiffs.

Thomas Brennan Ridgley, Vorys Sater Seymour & Pease–2, John Ryan Gall, Squire Sanders & Dempsey–2, Columbus, OH, Amanda Martinsek, Vorys Sater Seymour & Pease, Cleveland, OH, for Defendant.

### *OPINION AND ORDER*

SARGUS, District Judge.

This matter is before the Court on plaintiffs' motion for partial summary judgment (Doc. # 12) and on defendant's cross-motion for the same. (Doc. # 22). For the reasons that follow, plaintiffs' motion is granted in part and denied in part, and the defendant's motion is denied.

### I.

This is a class action brought by consumers of propane gas supplied by the defendant. Plaintiffs claim violations of the Equal Credit Opportunity Act

["ECOA"], 15 U.S.C. § 1691, *et seq.;* the Fair Credit Reporting Act ["FCRA"], 15 U.S.C. § 1681, *et seq.;* and the Ohio Consumer Sales Practices Act ["OCSPA"], O.R.C. § 1345.01, *et seq,* with respect to certain business practices and policies of the defendant. This Court exercises jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

The plaintiff class consists of all Ohio residential consumers who, at any time on or after September 1, 1994, are, have been, or will be customers of the defendant. (*See Opinion and Order,* September 29, 1999). The class also includes the following subclasses: (1) all Ohio residential consumers of propane as to whom, at any time on or after October 1, 1997, the defendant took or participated in adverse action based in whole or in part upon information in a consumer credit report or from a third party, as those terms are defined in 15 U.S.C. § 1681, *et seq.;* and (2) all Ohio residential consumers of propane who, at any time on or after September 1, 1996, did or will sign a credit application similar to that attached to the complaint, or those consumers who are or will be applicants for credit and/or the subject of adverse action by the defendant. (*Id.*).

Plaintiffs seek partial summary judgment on three issues. First, plaintiffs contend that there is no genuine issue of material fact that the defendant is a "creditor" for purposes of the ECOA. Second, plaintiffs contend that the defendant is subject to the statutory requirements of the FCRA as a "user" of consumer credit reports. Third, plaintiffs contend that no genuine issue of material fact exists with respect to the defendant's alleged violation of the notice requirements contained in the ECOA and the FCRA. The defendant has filed a cross-motion for partial summary judgment arguing that it is not a "creditor" for purposes of the ECOA and that it

did not violate the FCRA notice requirements, at least with respect to those plaintiffs against whom adverse action was taken since November 30, 1997. The Court will address each of the foregoing issues, in turn.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed.R.Civ.P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

When addressing cross-motions for summary judgment, these same rules of review apply. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991).

## III.

### A. Creditor Status Pursuant to the ECOA

The ECOA prohibits discrimination against applicants for credit on the basis of race, color, religion, national origin, sex, marital status or age. 15 U.S.C. § 1691(a). The ECOA also requires that creditors notify applicants for credit of "adverse action" within thirty days of such action. 15 U.S.C. § 1691(d). "Adverse action" means "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). The notification of adverse action must be in writing. 15 U.S.C. § 1691(d)(2).

Plaintiffs in this case argue that the defendant failed to comply with the notice requirements prior to taking adverse action against them. The defendant argues that the ECOA does not apply to the transactions at issue because the defendant is not a creditor. A "creditor" is defined as follows:

> [A]ny person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

15 U.S.C. § 1691a(e). Corporations are included within the definition of a "person." 15 U.S.C. § 1691a(f). "Credit" is defined as "the right granted by a creditor to a debtor to defer payment or debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).[1]

 Plaintiffs in the case at bar argue that there exist no genuine issues of material fact with respect to the defendant's

---

1. The regulations define "credit" in substantially similar terms: "[T]he right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment, or purchase property or services and defer payment therefor." 12 C.F.R. § 202.2(j).

status as a "creditor." Plaintiffs contend that by deferring payment for propane services, the defendant offers and extends "credit" as a regular business practice. Plaintiff points out that the defendant conducts credit checks[2] on each potential customer in order to determine the method by which that customer will pay for propane service. Individuals whose credit is satisfactory, in defendant's view, are entitled to "courtesy" propane fills or "will call" fills.[3] Individuals whose credit is not satisfactory, but who are nonetheless accepted as customers, are classified as "COD" customers and must pay cash upon delivery of propane. (*Exhibit 5* attached to *Deposition of Swasita Saigal; see also Deposition of Mary Hiatt* at 22).

The defendant argues that it is not a "creditor" because potential customers seek propane delivery services, not credit, from the defendant. Defendant emphasizes the fact that potential consumers do not request credit checks; rather, the defendant performs the checks at its own initiative. (*See Affidavit of Heather Donovan* attached as *Exhibit 2* to *Defendant's Memorandum contra*). Plaintiffs, however, point out that in addition to conducting credit checks, each customer who is accepted for propane delivery service receives a twenty day "credit extension," or deferred payment, for the initial service. (*Exhibits 1A, 1B, Id.*). Plaintiffs characterize this twenty day extension as an open-end credit arrangement within the purview of the ECOA. Defendant argues that the twenty day extension is simply a "more convenient [way] for Level to do business ...." (*Defendant's Memorandum contra* at 7).

■ The Court concludes that the defendant in the case at bar is a "creditor" for purposes of the ECOA. The fact that potential consumers do not themselves request credit from the defendant is of no consequence in the Court's view. It is the nature of the service transaction at issue that is determinative. As the United States Court of Appeals for the Sixth Circuit recently observed, the deferral of payment characterizes a "credit" transaction for purposes of the ECOA. *Barney v. Holzer Clinic,* 110 F.3d 1207 (6th Cir.1997). In considering the term "credit," the Court noted that only the first two alternatives found § 1691a(d) contemplate debt as a prerequisite to a "credit" transaction. In contrast, the third alternative "requires only the deferral of 'payment,' not the existence of 'debt.' " *Id.* at 1209. The transactions in the case at bar do not involve antecedent debt; however, deferral of payment is an element of the transactions. Indeed, several courts have held that a transaction does not involve "credit" for purposes of the ECOA unless the transaction involves a deferral of payment. *See Williams v. AT & T Wireless Services, Inc.,* 5 F.Supp.2d 1142, 1145 (W.D.Wash. 1998); *accord Dunn v. American Express Co.,* 529 F.Supp. 633 (D.Colo.1982) (holding that application for a teller card was not a credit transaction because it did not involve a deferral of payment).

In this case, consumers classified as "courtesy fills" and "will call fills" enjoy deferred payment for propane services. In addition, all consumers are given a twenty day "extension" or deferment of

---

2. Specifically, the defendant "routinely consults a credit scoring program when a potential customer first calls Level for propane service." *Affidavit of Michael A. Mitchell* at ¶ 3 attached as *Exhibit 1* to *Defendant's Memorandum contra.*

3. "Will call" customers request propane delivery from the defendant. In contrast, no request is necessary for "courtesy fill" customers. (*See Exhibit 5* attached to *Deposition of Swasita Saigal* ).

payment upon the defendant's initial delivery of propane. Thus, this Court concludes that the purchase of propane services at issue is properly characterized as a "credit" transaction for purposes of the ECOA. The situation at bar is analogous to that in *Williams v. AT & T Wireless Services, Inc., supra,* in which the Court held that a consumer's application for cellular phone service is a "credit" transaction for purposes of the ECOA because the transaction "involves the purchase of services and deferral of payment for those services." *Id.* In reaching its conclusion, the *Williams* court likened the purchase of cellular service to the purchase of various utility services, such as gas service. "In each case, the consumer incurs debt as he uses the services and is billed for the services on a periodic basis." *Id.* The same is true in the case at bar. Thus, the Court concludes that the transactions at issue are "credit" transactions, and the defendant is a "creditor" for purposes of the ECOA.

Plaintiffs' motion for summary judgment on the issue of the defendant's status as a creditor under the ECOA is meritorious. Conversely, the defendant's cross-motion for summary judgment on the same issue, is without merit.

**B. User Status Pursuant to the FCRA**

Plaintiffs also contend that no genuine issue of material fact exists with respect to the defendant's status as a "user" of consumer reports for purposes of the FCRA.

█ The FCRA imposes certain requirements upon users of consumer credit reports who take adverse action against the consumer on the basis of information contained in the report. 15 U.S.C. § 1681m. Plaintiffs in the case at bar claim that the defendant failed to adhere to the notice requirements contained in § 1681m before taking adverse action

against them. While the defendant disputes this contention, it appears uncontested that the defendant is a user of consumer reports for purposes of the FCRA. The defendant's general counsel avers that the defendant "routinely consults a credit scoring program when a potential customer first calls Level for propane service." (*Affidavit of Michael A. Mitchell* at ¶ 3, attached to *Defendant's Memorandum contra*). Consequently, the Court concludes that no genuine issue of material fact exists with respect to defendant's status as a user of consumer reports for purposes of the FCRA. Plaintiffs are therefore entitled to summary judgment on this issue.

**C. Violation of ECOA and FCRA Notice Requirements**

***The ECOA***

Plaintiffs assert that no genuine issue of material fact exists with respect to the defendant's alleged violations of the ECOA notice requirements. The defendant asserts that summary judgment is warranted in its favor or, in the alternative, that genuine issues of material fact preclude summary judgment on the notice issue.

The ECOA provides that applicants against whom "adverse action" is taken are entitled to "a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). Plaintiffs in the case at bar claim that the defendant routinely takes "adverse action" against both potential and existing consumers of propane services. "Adverse action" is defined as follows:

> [A] denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is de-

linquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(6).

With respect to potential consumers, plaintiffs argue that the defendant either rejects or imposes certain restrictions on them based upon information gleaned from the individual credit reports. For example, plaintiff Hiatt asserts that upon contacting the defendant for propane service, she was simply informed over the telephone that her credit was unsatisfactory and that she would be required to pay cash. (*Deposition of Mary Hiatt* at 22). Plaintiffs contend that, pursuant to the ECOA, potential consumers who are rejected in this manner are entitled to written notification of such action. Ms. Swasita Saigal, the defendant's representative, testified on deposition that certain consumers whose credit was not satisfactory were required to make a deposit; she further testified that a price deviation of between ten to twenty cents was imposed upon other consumers with unsatisfactory credit. Ms. Saigal testified that while the defendant continues to impose deposits upon certain consumers with unsatisfactory credit, price deviations are no longer utilized. (*Deposition of Swasita Saigal* at 28–40). Michael Mitchell, defendant's general counsel, avers that following a potential consumer's credit check, the defendant either unconditionally accepts the customer; declines the customer; or conditionally accepts the customer with the caveat of a security deposit and/or an increased price for services. (*Affidavit of Michael A. Mitchell* at ¶ 4).

■ In response to plaintiffs' assertions regarding potential consumers of propane service, the defendant first argues that these individuals are not "applicants" for credit under the ECOA so as to trigger the requirement of notice for adverse action. The term "applicant" is defined as follows:

[A]ny person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit.

15 U.S.C. § 1691a(b). The regulations define "applicant" in a slightly different manner; an applicant is "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e). This Court concludes that potential customers of propane service satisfy the regulatory definition of "applicants" for purposes of the ECOA. As discussed *supra*, each potential consumer of propane services is credit scored and if accepted, receives a twenty day payment deferral for services. Thus, defendant's assertion that the ECOA notice requirements do not apply to the class of potential propane consumers, is without merit.

■ In regard to written notice of adverse action, the defendant argues that each potential consumer is notified of the conditions upon which they are accepted or denied and the basis for such decision. (*See Affidavit of Michael A. Mitchell* at ¶¶ 5–7). Nonetheless, the defendant argues that judgment as a matter of law is inappropriate on the notice issue because factual issues exist with respect to each member of the class. This Court agrees. While the written notification provided to potential consumers arguably satisfies the requirements of 15 U.S.C. § 1691(d), the Court cannot make a determination with respect to each member of the class of potential propane consumers based upon the current record. Thus, both plaintiffs'

and defendant's motions for summary judgment on this issue are without merit.

■ Plaintiffs also contend that no genuine issues of material fact exist with regard to the defendant's alleged violation of notice requirements for adverse action taken against existing consumers of propane services. Plaintiffs claim that the defendant cancels "courtesy fill" and "will call" status, levies COD sales terms, and imposes upward price deviations on existing consumers without written notification. Plaintiff Mick testified on deposition that he was informed by a representative of the defendant that because he was paying cash for propane service that the price per gallon would be higher. (*Deposition of Larry Mick* at 63). Ms. Anderson testified that, although she initially requested to be placed on a payment "budget," she was informed that a budget could not be established until after at least one year of propane service. (*Deposition of Emma Anderson* at 28). Ms. Anderson also testified that she was treated as a courtesy fill customer rather than as a will call customer. (*Id.* at 41–42). Plaintiffs maintain that each of these are instances of adverse action for which written notification is required.

The defendant disputes plaintiffs' assertions. Defendant argues that mistakenly treating plaintiffs Anderson and Mick as "courtesy fill" rather than as "will call" customers does not constitute "adverse action." Defendant also argues that the placement of plaintiffs Mick and Anderson on COD status because of payment delinquency, does not constitute adverse action. However, plaintiff Anderson argues that her payment delinquency was a result of erroneously being treated as a courtesy fill customer. (*See Deposition of Emma Anderson* at 58–65). Plaintiff Mick makes a similar allegation. (*Deposition of Larry Mick* at 56–57). Thus, plaintiffs contend that adverse action was taken for which written notice was required.

In light of the foregoing, the Court concludes that genuine issues of material fact exist with regard to whether adverse action was taken against existing consumers of propane service so as to trigger the ECOA notice requirements. Consequently, plaintiffs' motion for partial summary judgment on the notice issue with respect to existing consumers, is without merit. Defendant's motion for summary judgment on this issue is similarly without merit.

### The FCRA

The FCRA requires notification of adverse action taken against a consumer when the action is based in whole or in part upon information contained in the consumer's report. 15 U.S.C. § 1681m(a). Plaintiffs contend that, since October 1, 1997, the defendant has violated the notification requirements. Defendant's general counsel, Michael Mitchell, avers that since at least November 30, 1997, the defendant has issued written notification of adverse action[4] in accordance with FCRA requirements; defendant has submitted examples of the letters issued in this regard. (*See Exhibits C, D* attached to *Affidavit of Michael Mitchell* at ¶¶ 6–7). Plaintiff nonetheless contends that the notification utilized is deficient because it does not advise the consumer of his or her right to a free disclosure of the credit report, or the right to dispute the accuracy or completeness of information directly with the consumer reporting agency. 15 U.S.C. § 1681m(a)(3)(A), (B). Defendant contends that it has "maintained reasonable

---

4. The adverse action taken consists of defendant's rejection of potential customers, and the defendant's conditioning of acceptance upon submission of a security deposit and/or the imposition of a higher price for propane service. (*Affidavit of Michael Mitchell* at ¶ 4).

procedures to assure compliance [with the FCRA]." 15 U.S.C. § 1681m(c).

■ It appears undisputed that the defendant failed to comply with FCRA notice requirements for the time period of October 1, 1997 to at least November 30, 1997 in taking adverse action against potential consumers of propane services. While Mr. Mitchell avers that he is uncertain of the exact date upon which the current notification procedures were instituted (*See Affidavit of Michael Mitchell* at ¶¶ 6–7), based upon the testimony of Ms. Swasita Saigal, the procedures utilized were clearly deficient for purposes of § 1681m. Section 1681m requires that users of consumer reports provide oral, written or electronic notice of adverse action to the consumer, including the "name, address, and telephone number of the consumer reporting agency ... that furnished the report ..." and "a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken ...." 15 U.S.C. § 1681m(a)(1), (2)(A)(B). In addition, users of consumer reports are to provide oral, written, or electronic notification of the consumer's right "to obtain, under section 1681j ... a free copy of a consumer report on the consumer from the consumer reporting agency ... which notice shall include an indication of the 60–day period under that section for obtaining such a copy" and the right to "dispute ... with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished´ by the agency." 15 U.S.C. § 1681m(a)(3)(A), (B).

Ms. Saigal testified on deposition that the defendant's practice was to simply inform potential consumers that, based upon their credit information, propane service could not be granted. (*Deposition of Swasita Saigal* at 33–35). Defendant fails to produce any evidence to the contrary. Thus, plaintiffs' motion for summary judgment on the notice issue for the time period of October 1, 1997 to at least November 30, 1997, is meritorious.

■ In addition, the Court concludes that, with respect to the time period following November 30, 1997, genuine issues of material fact exist with respect to whether the defendant complied with the FCRA notice procedures. Plaintiffs point out that the defendant's current notices fail to inform potential consumers of the fact that the credit report is free and that they have the right to dispute the accuracy of the information contained in the report, in accordance with § 1681m(a). The current notices provide consumers with the following: the name, address and telephone number of the reporting agency; notification that the reporting agency's role is only to provide credit information; and notification that the consumer is entitled to receive a copy of the credit information within 60 days of receipt of the defendant's letter. (*See Exhibits C, D* attached to *Defendant's Memorandum contra*). Although the defendant argues that it has maintained reasonable procedures to assure compliance with the provisions of the FCRA, 15 U.S.C. § 1681m(c), whether it meets this standard is a question of fact. *Mathews v. Government Employees Ins. Co.*, 23 F.Supp.2d 1160, 1163 (S.D.Cal. 1998). Thus, the Court concludes that summary judgment on the FCRA notice issue with respect to the time period following November 30, 1997 is inappropriate for either party.

## IV.

In light of the foregoing, plaintiffs' motion for partial summary judgment (Doc. # 12) is GRANTED in part and DENIED in part as set forth above; defendant's cross-motion for summary judgment (Doc.

# 22) is DENIED. Plaintiffs' motion for an extension of time to file a reply brief (Doc. # 25) is GRANTED effective January 24, 2000.

**IT IS SO ORDERED.**